UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00495-GNS

UNITED STEEL, PAPER AND
RUBBER, MANUFACTURING, ENERGY,
ALLIED-INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC AND ITS LOCAL NO. 1693                                          PLAINTIFF

v.

LLFLEX, LLC d/b/a
ORACLE PACKAGING, INC.                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 5). The motion is

ripe. For the reasons below, the motion is **GRANTED**.

### I.        BACKGROUND

Defendant LLFlex, LLC ("Company") is an Illinois corporation which owns and operates

a facility in Louisville, Kentucky, with employees represented by Plaintiff United Steel, Paper and

Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union, AFL-

CIO-CLC and Its Local No. 1693 ("Union"), a labor organization under the Labor Management

Relations Act of 1947, 29 U.S.C. §§ 141-197. (Compl. ¶¶ 3-4, DN 1). The Company and the

Union are parties to a collective bargaining agreement ("CBA") that covers terms and conditions

of employment for certain employees. (Compl. ¶ 5; Def.'s Mot. Dismiss Ex. 1, at 2, DN 5-1

[hereinafter CBA]). The Union alleges the Company violated the CBA in January 2018 when it

altered retiree healthcare plans to require affected retirees to pay a share of the premium costs

related to those benefits. (Compl. ¶ 7).

1

The CBA provides for a three-step grievance procedure followed by final and binding arbitration. (Compl. ¶ 8). In December 2017, the Union filed a grievance protesting the Company's decision to shift premium costs to retirees as a violation of the CBA. (Compl. ¶ 9). When there was no resolution through the grievance procedure, the Union moved the grievance to arbitration, but the Company refused to arbitrate. (Compl. ¶ 9-11).

The Union brought this action to have the grievance at issue deemed arbitrable and to have the Company ordered to arbitrate the grievance pursuant to the procedures described in Article XV of the CBA. (Compl. 3). The Company now moves to dismiss the Union's Complaint for lack of standing and for failing to state a claim. (Def.'s Mot. Dismiss 2-3, 8, DN 5). The Union contends that it does have standing to bring these claims on behalf of the affected retirees, that the presumption of arbitrability directs the Court to find the grievance arbitrable, and that the language of the CBA is broad enough to include retirees. (Pl.'s Resp. Def.'s Mot. Dismiss 2, 10, 14, DN 13 [hereinafter Pl.'s Resp.]).

## II.     JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(c).

## III.     STANDARD OF REVIEW

Dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(1) is proper when the Court determines it lacks subject matter jurisdiction over a claim, including when a plaintiff lacks standing. *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) (standing is "thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction."). Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598

(6th Cir. 1994). Facial attacks challenge subject matter jurisdiction as to the sufficiency of the pleadings. For facial attacks courts will consider the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* Factual attacks challenge subject matter jurisdiction as to the facts alleged in the pleadings, in which case courts weigh conflicting evidence and resolve factual disputes in determining whether there is jurisdiction. *Id.*

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[], accept all well-pled factual allegations as true" and determine whether the "complaint states a plausible claim for relief . . . ." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (citation omitted). To survive a motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere statements of legal conclusions are insufficient for avoiding a 12(b)(6) motion to dismiss. *Id.* at 678. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Harchar*, 694 F.3d 639, 644 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 677).

## IV. DISCUSSION

### A. Standing

The Company challenges the Union's complaint on the sufficiency of its pleadings, which is a facial attack. Accordingly, the Court will consider the Union's factual allegations as true in

deciding whether it has standing to bring this claim on behalf of retirees.  *See Ritchie*, 15 F.3d at 598.

To have standing under Article III of the U.S. Constitution, a plaintiff must suffer an injury that is fairly traceable to the challenged action, for which a favorable decision from the court could provide redress.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The Sixth Circuit has held that "where a union and company bargain for retirees' benefits and include the benefits in their contract, the union has standing to represent the retirees in any dispute concerning those benefits."  *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am., Local 270*, 440 F.3d 809, 815 (6th Cir. 2006).

In *Cleveland Electric*, the union and the company included retiree benefits in their collective bargaining agreement.  The company decided to make changes to health benefits under that agreement for active employees and retirees, and the parties submitted the matter to arbitration.  The court held that the company waived any objection it had to arbitration by failing to object and further upheld the arbitrator's decision that the dispute was subject to arbitration under the collective bargaining agreement.  *Id.* at 813, 816.

The present case is markedly different than *Cleveland Electric*.  First and foremost, the retirees for whom the Union seeks to challenge changes to healthcare benefits are "employees who retired from the Company by June 29, 2017.  (Compl. ¶ 6).  Further, because the CBA under which the Union sues did not become effective until September 1, 2017 (Compl. ¶ 5), the subject retirees have no rights under that agreement because they were retired before the CBA went into effect. The CBA makes no reference whatsoever to retirees.  Article I of the CBA specifically states that it applies solely to production workers at the Company's Louisville plant.  Since the CBA became effective on September 1, 2017, and is limited by its express terms solely to the production

employees of the Company, the Union does not have standing under the CBA to assert rights of employees who retired *before* the CBA went into effect. *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 181 n.20 (1971) (recognizing that "vested retirement rights may not be altered without the pensioner's consent.").[1] Thus, the Union has failed to plead facts demonstrating that it has standing to compel arbitration on behalf of retirees. *See Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 539 (7th Cir. 1997) (concluding union lacked standing because there was no evidence retirees consented to representation and, even if retirees had consented, there was no evidence employer agreed to bargain on subject of retiree benefits in CBA).

B.     **Motion to Dismiss**

Even assuming the Union has standing to assert rights of retirees, the Company also moves to dismiss the Union's Complaint for failing to state a claim because the CBA does not require it to arbitrate retiree grievances. (Def.'s Mot. Dismiss 9). The Union contends that the Company cannot overcome the presumption of arbitrability and that it has alleged facts sufficient to sustain its claim under the CBA. (Pl.'s Resp. 16).

In deciding the arbitrability of a dispute, the Court begins with the presumption that national labor policy favors arbitration. *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 667 (6th Cir. 2013) (citation omitted). With this in mind, the Court proceeds under the guidance of four principles set forth in *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986), and summarized by the Sixth Circuit as follows:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide

---

[1] Former Company employees who retired before this CBA may have rights under a *prior* agreement, but nothing in this CBA reflects any authority of the Union to bargain on behalf of retirees or agreement by the Company to such an arrangement. *Id.*

otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994) (citation omitted). Article XV of the CBA provides for arbitration of employee grievances that cannot be resolved through the four-step grievance procedure. (CBA 26-28). The grievants in this case, however, are retirees. Therein lies the rub.

"A union's power to negotiate with management derives from the fact that the union is the exclusive bargaining representative of a group of people. Labor jurisprudence is clear that retirees cannot be part of this group or 'bargaining unit'" because they lack the bargaining chip central to these agreements—the ability to strike. *Rossetto*, 128 F.3d at 539-40; *see Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455 (1956) ("Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike."). The Supreme Court has also concluded that retirees are not employees or included as part of a bargaining unit, even where an employer modifies benefits originally established through collective bargaining. *Allied Chem.*, 404 U.S. at 172, 187-88. Instead, "claims for [these] benefits . . . belong to the retirees individually, and the retirees may deal directly with [their former employer] in pursuing such claims." *Rossetto*, 128 F.3d at 540 (citations omitted).

This does not foreclose a union from ever bargaining on behalf of a retiree; a union may be permitted to bargain on behalf of retirees when it has the assent of the retiree and the employer agrees to the arrangement. *Id*. (dismissing union's claims for lacking standing when retirees did

6

not assent to representation and employer did not agree to bargain on topic of retiree health benefits) (citing *Allied Chem.*, 404 U.S. at 181 n.20).

The Union has pleaded it obtained the consent from some affected retirees to represent them in their grievance against the Company. (Compl. ¶ 13). Assuming this is true, the question remains whether the Company agreed to arbitrate retiree grievances under the CBA. *See Granite Rock v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."); *Rossetto*, 128 F.3d at 540; *Fletcher v. Honeywell Int'l, Inc.*, 207 F. Supp. 3d 793, 795 (S.D. Ohio 2016) ("Agreeing to arbitrate disputes with the union and with employees does not constitute consent to also arbitrate disputes with retirees."). This requires the Court to interpret the CBA. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("[W]hether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." (internal quotation marks omitted) (citation omitted)).

"[T]he presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." *Cleveland Elec.*, 440 F.3d at 816. Thus, where parties disagree as to whether a bargaining agreement requires arbitration, the court should presume the grievance is arbitrable unless "it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Mead Corp.*, 21 F.3d at 132. Courts may not consider the underlying merits in making this determination. *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). Therefore, the relevant question is whether the disputed issue falls within the

scope of the arbitration provision in the CBA—a question which courts should resolve using ordinary principles of contract law. *M&G Polymers USA, LLC v. Tackett*, 123 S. Ct. 926, 933 (2015); *see also Cooper v. Honeywell Int'l, Inc.*, 220 F. Supp. 3d 850, 859 (W.D. Mich. 2016) ("[T]he presumption [of arbitrability], without record support, is not alone a sufficient basis upon which to compel arbitration.").

As an initial quandary, the Union and the Company disagree as to which specific provision of the CBA governs arbitration. The Company argues the relevant provision is Article XV(A), which provides:

> It is agreed that there shall be a grievance committee of the Union whose duty it shall be to make an earnest effort to settle any grievances or differences that might arise between the Company and the employees as to working conditions, discharges, seniority rights, layoff, and re-employment.

(Def.'s Mot. Dismiss 6; CBA 26). The Union disagrees that this is the relevant provision and characterizes it as an independent, optional process. (Pl.'s Resp. 6). The Union instead argues that the mandatory grievance- arbitration procedure set forth in Article XV(G) controls:

> It is understood that any employee who feels that he/she has a just grievance shall:
> **Step 1**:    The employee and/or shift steward shall refer the matter to the employee's immediate supervisor within seven (7) calendar days of the occurrence of the grievance. Failing satisfactory settlement of the grievance, the employee shall present the grievance in writing to his/her immediate supervisor within seven (7) calendar days of the initial referral.
> **Step 2**:    The Manufacturing or Plant Manager and/or his/her representative shall hold a meeting and give an answer within ten (10) calendar days of the submission in writing. If the decision of the Manufacturing or Plant Manager and/or his/her representative is not satisfactory to the grievance committee, the committee may within seven (7) calendar days present the grievance in writing to Step 3 or Step 4 or the grievance will be considered dropped.
> **Step 3**:    If the written grievance, as submitted in Step 2, has not been satisfactorily settled, the Union shall have the right to refer the grievance to an International Representative of the Union who shall arrange a meeting with the Plant Employee Relations Manager and/or his/her representative to occur within thirty (30) calendar days of the receipt of the Step 2 answer.

The Plant Employee Relations Manager and/or his/her representative shall give an answer in writing within seven (7) calendar days after the meeting. **Step 4**: If the written grievance has not been satisfactorily settled in Step 2 or Step 3, the grievance may be submitted in arbitration within seven (7) calendar days of the receipt of Step 2 answer or (60) calendar days of the receipt of the Step 3 answer or it will be considered dropped:

    1.    The impartial arbitrator shall be mutually agreed upon by the Company and the Union, should they be unable to agree upon an impartial arbitrator within ten (10) days after such arbitration has been requested, the Director of the Federal Mediation and Conciliation Service shall be requested to submit to both parties a panel or arbitrators from which one (1) shall be accepted by agreement of both parties, or by striking names alternately until one (1) name remains. Such appointment shall be final and must be accepted by both parties.

    2.    The fee and all expenses of the arbitrator shall be borne equally by the Company and the Union, provided, however, that the fees and expenses of witnesses, the cost of documentary evidence and matters of that nature shall in all cases be borne by the parties procuring the same.

(CBA 27). For additional support, the Union points to Article XV(I), which provides that "[t]he arbitrator's awards and opinions shall only involve interpretation or application of this Agreement, and shall be final and binding on both parties." (Pl.'s Resp. 7; CBA 28). With this, the Union argues that, because the modification of retiree medical benefits was written into the CBA at Article XIX(h),[2] Article XV(I) instructs that the arbitrator's authority extends to grievances between the affected retirees and the Company. (Pl.'s Resp. 7).

The Court does not need to decide which provision of the CBA governs arbitrability because neither supports the Union's assertion that the Company agreed to arbitrate retiree grievances. Looking first to Article XV(A), the language provides for a committee to settle

---

[2] Article XIX(h) of the CBA provides: "(Historical) The retiree medical provisions were modified as follows: effective June 30, 2017, retiree medical Eligibility was terminated. Anyone who did not retire under the DB plan by June 29, 2017 is not eligible for retiree medical coverage." (CBA 34).

grievances "that might arise between the Company and the employees as to working conditions, discharges, seniority rights, layoff, and re-employment." (CBA 26). This section identifies two parties subject to the grievance process: the company and its employees. As the Supreme Court has said, "[t]he ordinary meaning of 'employee' does not include retired workers; retired employees have ceased to work for another for hire." *Allied Chem.*, 404 U.S. at 168.

The subject matter overseen by this committee also forecloses participation from retirees: retirees do not have a continuing stake in working conditions, discharges, seniority rights, layoffs, or reemployment after they have ended employment. *See id.* If the Union and the Company truly intended retiree grievances to be subject to arbitration, language so indicating would have been incorporated into this provision.

Turning to Article XV(G), the procedure set forth in that provision appears wholly incompatible with retiree grievances. First, the introductory clause to this provision instructs "employees who feel they have a just grievance" to follow the proceeding four-step procedure. (CBA 28). As discussed above, the term employee does not include retirees. *Allied Chem*., 404 U.S. at 168.

Second, Step 1 of Article XV(G) instructs these employees, or their "shift steward," to report the grievance to the "employee's immediate supervisor . . .." (CBA 28). Complying with Step 1 is impossible for retirees because they do not have a supervisor to whom to report the grievance. This interpretation is further supported by the provision alternatively allowing the "shift leader" to make the report, again referencing current employees. Because retirees are no longer working, they have no immediate supervisor or shift leader. Subjecting retiree grievances to arbitration is wholly incompatible with the procedures set forth in the CBA, which cannot be reasonably interpreted to compel the Company to arbitrate those grievances. *See Fletcher*, 207 F.

Supp. 3d at 797 ("[T]he structure of [the] grievance/arbitration procedures makes it plain that the parties did not intend for disputes with retirees to be subject arbitration."); *see also Quick Air Freight, Inc. v. Teamsters Local Union No. 413*, 613 F. Supp. 1263, 1273 (S.D. Ohio 1984) (finding it "abundantly clear" retiree grievances not subject to arbitration when the grievance and arbitration procedure required an "aggrieved employee" to first submit his or her claim "to his supervisor"). Article XV(I) similarly does not support the Union's argument that the Company agreed to arbitrate retiree grievances. Article XV(I) limits—not expands—the arbitrator's authority to issue awards to only those employee disputes interpreting or applying the CBA.

The Union points to *VanPamel* and *Cleveland Electric* to argue that the CBA requires the Company to arbitrate retiree grievances. (Pl.'s Resp. 8). In *VanPamel*, the Sixth Circuit found that the parties to the CBA at issue there "clearly bargained for retirees' healthcare benefits." *VanPamel*, 723 F. 3d at 669. The arbitration provision considered in *VanPamel* provided: "*Any* alleged violation of the CBA, its changes and this Termination Agreement will be subject to final and binding arbitration." *Id.* at 667 (emphasis added). In *Cleveland Electric*, the Sixth Circuit found that the "parties clearly bargained for retirees' health benefits" based on its reading of the arbitration provision stating, "the following grievance procedure shall be used by the Union to settle or adjust *any* disagreement concerning the interpretation or application of this Agreement." *Cleveland Elec.*, 440 F.3d at 814 (emphasis added). "When there is a general or broad arbitration clause, 'the presumption of arbitrability [is] 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *VanPamel*, 723 F.3d at 668 (citation omitted). In both *VanPamel* and *Cleveland Electric*, the language of the arbitration provisions was broad enough to encompass disputes concerning retiree benefits. *See VanPamel*, 723 F.3d at 668;

*Cleveland Elec.*, 440 F.3d at 814. The arbitration provision of the CBA presently before this Court is not so broad, and there is "forceful evidence" that the retiree claims put forth by the Union are excluded from arbitration. *See VanPamel*, 723 F.3d at 668. Unlike the provisions in *VanPamel* and *Cleveland Electric*, the arbitration and grievance procedure here do not encompass "any" dispute, but instead are limited to grievances from **employees** concerning "working conditions, discharges, seniority rights, layoff, and re-employment." (CBA 26).

Additionally, there is "forceful evidence" that retiree grievances are not subject to arbitration under the CBA. As discussed above, retiree compliance with the CBA grievance process is impossible because retirees do not have the "immediate supervisors" or "shift stewards" contemplated in the grievance procedure. *See Fletcher*, 207 F. Supp. 3d at 797-98; *Quick Air Freight*, 613 F. Supp. at 1273. Based on the text of the grievance/arbitration procedure, its context within the CBA, and the incompatibility of retirees with the arbitration/grievance procedure, the Court has "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Mead Corp.*, 21 F.3d at 132. Therefore, the presumption of arbitrability is overcome, and the Company's motion to dismiss will be granted.

## V.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 5) is **GRANTED**, and the Complaint is **DISMISSED**.

Greg N. Stivers, Chief Judge
United States District Court

March 28, 2019

cc:   counsel of record

12